Leon FIELDS, Appellant,

v.

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.**

No. 8864.

Court of Civil Appeals of Texas, Amarillo.

April 10, 1978.

Appellant's and Appellee's Rehearing Denied May 8, 1978.

Brown & Brown (Phill Brown), Lubbock, for appellant.

Crenshaw, Dupree & Milam (Cecil Kuhne), Lubbock, for appellee.

DODSON, Justice.

This is a case under the Workmen's Compensation Act. After an award by the Industrial Accident Board the workman, appellant Leon Fields, brought suit against the insurer, appellee Texas Employers' Insurance Association, seeking total and permanent incapacity benefits for an injury sustained on May 17, 1975, while employed by Linois Well Service. The jury found that the workman received an injury in the course of his employment which was a producing cause of total incapacity from May 17, 1975, until April 29, 1976, followed by partial incapacity beginning on April 30, 1976, and ending June 10, 1976. The trial court entered judgment for Fields in the amount of $811.17 after crediting the insurance company with paid compensation benefits. Fields appeals this judgment. The judgment of the trial court is affirmed.

Fields sustained his injury when the oil field equipment he was operating collapsed during an oil well pulling operation. He was treated for the injury by four doctors of his choice. Each of the doctors diagnosed his primary injury as right epididymitis. His condition fluctuated for several months. Then Dr. Avant performed a right epididymectomy. The insurance company paid all the medical expenses and did not refuse any medical treatment of his injury. Fields returned to work in the early summer of 1976 and was working at the time of trial.

Mr. Fields contends the judgment should be reversed and the cause remanded for a new trial for several reasons. He maintains that the trial court should have granted a new trial because of jury misconduct; that the jury's verdict on the issue of partial incapacity is against the great weight and preponderance of the evidence; that the trial court erroneously permitted the insurance company to reopen the evidence to show the amount of compensation paid him; and that the evidence is factually insufficient to support the trial court's finding of the amount of compensation previously paid and credited in the judgment.

The insurance company says Fields failed to show jury misconduct and that the trial court did not abuse its discretion in failing to grant a new trial on this ground. Three jurors testified at the new trial hearing. Fields purported to establish that the jury agreed in advance of answering the partial incapacity issue that the insurance company should win and then attempted to bring about the desired result without considering the evidence. Particularly, he says the jury erroneously chose the date of June 10, 1976, to end Fields' partial incapacity because he failed to keep an appointment with Dr. Avant on that day, and that such action was jury misconduct.

 Fields had the burden to establish jury misconduct and harmful error in this regard. Ordinarily, the occurrence of jury misconduct is a question of fact to be determined by the trial court, which has wide latitude in making its determination. In the absence of a clear showing of abuse of discretion, the appellate court is bound by the trial court's determination. *See Morgan v. State,* 343 S.W.2d 738 (Tex.Civ.App. —El Paso 1961, writ ref'd n. r. e.).

 Fields made no request and the trial court did not file findings of fact and conclusions of law on the misconduct matter. Under these circumstances, the appellate court must presume that every disputed fact issue was found by the trial court in support of the judgment rendered. *Collins v. Collins,* 540 S.W.2d 497 (Tex.Civ.App.— Tyler 1976, no writ). The trial court's failure to find jury misconduct means that Fields failed to carry his burden of persuasion on this issue. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973). Our review of the testimony elicited from the jurors at the motion for new trial hearing reveals that Fields was attempting to probe the jury's mental processes in arriving at its answers to the issues. The testimony totally fails to show any agreement in advance to answer any issue favorably to either party. Under the circumstances of this case, we conclude that the trial court clearly did not abuse its discretion in failing to find jury misconduct and grant Fields a new trial on this allegation.

Fields also avers that the jury's finding that his partial incapacity ended June 10, 1976, is so against the great weight and preponderance of the evidence as to be manifestly wrong. This contention merits consideration of the evidence.

Two days after his injury Fields saw the first of the four doctors to treat him. After treating him, the first doctor released Fields to full duty on May 22, 1975. Four days later Fields contacted another doctor who hospitalized him for four days of treatment. Fields was discharged with instructions to wear a truss and return for evaluation of his ability to return to work. After missing two appointments Fields complained of pain and was referred to Dr. Hewitt who also hospitalized him. He was released in good condition with his epididymitis almost completely resolved. Dr. Hewitt's associate, Dr. Avant, later ob-

served that "Mr. Fields most likely has a chronic epididymitis and vastis which has undoubtably been aggravated by his failure to take his medication as prescribed. . . If Mr. Fields should require a right epididymectomy to rid him of the recurrent bouts of epididymitis, his disability will be only temporary."

On April 1, 1976, Dr. Avant performed a right epididymectomy on Fields. He was discharged from the hospital on April 3, 1976, and followed with a post operative examination on April 29, 1976. Dr. Avant said in reviewing his course of treatment that Fields' "condition waxed and waned, and I feel that until he underwent surgery on April 1, 1976, that he was indeed disabled in terms of performing his usual type of labor. From the standpoint of heavy work that Mr. Fields was engaged in prior to his injury I would say that his disability was complete from the dates of September 15, 1975, until April 29, 1976." Dr. Avant further said, "The diagnosis for which Mr. Fields was specifically treated by me was chronic relapsing right epididymitis. This will not occur because the epididymis has been removed. . . . . It would be a speculation to say that he will have recurrence of his problem on the left side. The truth of the matter is that he does have persistence of organisms in his urinary tract which if not suppressed or eradicated with antibiotic therapy can cause recurrence of his infection, either spontaneously or from recurrent traume to the genitalia." Dr. Avant also testified concerning a "guarded prognosis" which he related to the chance of "sustaining recurrent injury to the portions of the urinary tract . . . ."

In the early summer of 1976, Fields returned to work for another employer in the restaurant business in Post, Texas. He worked as a dishwasher and then he was promoted to cook-helper. In December 1976, Fields worked at a gin as a suction hand for several days to make some quick money for his wife's hospitalization to give birth to a baby. Subsequently, he returned to restaurant work and continued in this employment at the time of trial.

Unfortunately, there is no precise formula by which incapacity may be measured and the extent and duration of disability is at best an estimate. *Gulf Insurance Company v. Hodges,* 513 S.W.2d 267, 272 (Tex.Civ.App.—Amarillo 1972, no writ); *Maryland Casualty Company v. Davis,* 464 S.W.2d 433, 438 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.). Normally, the extent and duration of incapacity is a fact issue for the jury. *Montoya v. American Employers Insurance Company,* 426 S.W.2d 661, 662 (Tex.Civ.App.—El Paso 1968, writ ref'd n. r. e.). Also, the fact that an injured workman has returned to work and earned money does not preclude him from recovering benefits for the time he was gainfully employed; however, the fact of employment is of probative weight which the jury is entitled to consider in determining the extent and duration of incapacity. Also, the jury is not required to accept uncontroverted expert medical opinion testimony on incapacity. *Aguirre v. Pan American Insurance Company,* 417 S.W.2d 900, 902 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.); *Texas General Indemnity Company v. Shick,* 372 S.W.2d 360, 363 (Tex.Civ.App.—Eastland 1963, no writ). *See also Esteve Cotton Company v. Hancock,* 539 S.W.2d 145, 158 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.).

In this case, the evidence is ample to support the jury's finding on incapacity. We have considered all of the evidence in this record, both favorable and unfavorable to Fields' position and we conclude that the jury's finding concerning the duration of partial incapacity is not so against the great weight and preponderance of the evidence as to be manifestly unjust or wrong.

The insurance company contends that the trial court properly permitted it to reopen the closed testimony to show the amount of compensation paid to Fields. Rule 270 of the Texas Rules of Civil Procedure provides: "At any time the court *may* permit additional evidence to be offered where it clearly appears to be necessary to the due administration of justice. Provided in a jury case no evidence on a

controversial matter shall be received after the verdict of the jury." (emphasis added) Under this rule the trial court has discretion to permit additional evidence on a non-controversial matter in a jury case even after the verdict is received.

The insurance company pleaded generally the payment of compensation to Fields and prayed for credit of such payments against any award in his favor. This pleading was not excepted to by Fields. Fields and his wife both testified the insurance company paid compensation in the amount of $70 per week beginning after his accident. They said the insurance company stopped payment once, but continued to pay until after the epididymectomy operation. Fields did not dispute receiving compensation payments and did not controvert the amount of compensation the insurance company claimed it paid. In short, the matter was not a disputed or controverted issue. The trial court did not abuse its discretion by permitting the insurance company to re-open the evidence.

 Fields now contends the evidence is factually insufficient to show the amount paid by the insurance company. In this connection, the insurance company, on proper predicate, introduced its business records showing the amount of compensation paid to Fields. The evidence shows compensation paid for 45 weeks at $70 per week for a total of $3150. The paid periods were May 24, 1975, to March 5, 1976, then March 31, 1976, to April 20, 1976. This evidence agreed with testimony of Fields and his wife and is sufficient to support the trial court's finding on the amount of compensation payment to Fields. In summary, Fields' points of error one, two, three and four are overruled.

 By cross-point the insurance company contends that Fields is not entitled to interest on the judgment in this action beyond May 25, 1977, because on May 18, 1977, it tendered into the registry of the court the full amount of the judgment with interest thereon at the rate of nine percent per annum from March 9, 1977, (the date of judgment) to May 25, 1977. In support of

its position, the insurance company relies on the holding of *St. Paul Mercury Insurance Company v. Billiot,* 342 S.W.2d 161, 164 (Tex.Civ.App.—Beaumont 1960, writ ref'd), that payment into the registry of the court of all sums due under a judgment terminates interest as of the date on which the deposit was made. We do not consider *Billiot* to be controlling of the factual situation in the present case. Unlike the tender in *Billiot,* Texas Employers' tender, by its terms, is conditioned on settlement of the litigation, avoidance of further contentions, and is not an admission or waiver of any right to complain of the judgment. Such a conditional tender is not a valid payment of the judgment in full, and it should not stop the running of interest on a judgment being appealed. *See Baucum v. Great American Insurance Company of New York,* 370 S.W.2d 863, 866 (Tex.1963). The insurance company's cross-point is overruled.

Accordingly, the judgment is affirmed.